IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

EDWIN I. KNOWLES,       )
                                  )
        Plaintiff,         )
                                  )
    v.                       )    Case No. 1:17-cv-839-ALB
                                  )
INZI CONTROLS ALABAMA, INC.,   )
                                  )
        Defendant.      )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Inzi Controls Alabama, Inc.'s motion for summary judgment. (Doc. 26). Inzi terminated 64-year-old Plaintiff Edwin I. Knowles as part of a reduction in force. But Knowles claims that his termination was a mere pretext for age discrimination. Inzi counters that Knowles's termination was not discriminatory; it was part of a massive reduction in force compelled by unfeeling market forces. The Court holds that Knowles has not produced substantial evidence to support his claims, and the motion is due to be GRANTED.

### BACKGROUND

Knowles is suing his former employer, Inzi, for age-discrimination during a reduction in force. At issue are some comments made by Knowles's supervisors and the ages of the employees retained after the reduction in force. Knowles worked at

Inzi and its predecessor plant until he was 64. During those eleven years, Knowles worked mostly as a maintenance technician on the second of three shifts. (Doc. 26-12 at 59, 95; Doc. 26-1 ¶12). Knowles alleges that two of his coworkers, Weisensale and Andrews, took over his work when he was terminated.

At the time of the reduction in force, Weisensale was about 26. (Doc. 26-5 at 3). For the six months preceding the reduction in force, Weisensale had worked as a maintenance technician. But before that he had worked in another department as a mold setter for almost two years. (Doc. 26-8 at 2). Even as a maintenance technician, Weisensale "continued to do some mold setting on second shift along with maintenance technician duties …." (Doc. 26-6 ¶13). Knowles initially claimed that there was about a forty-percent overlap between his job as a maintenance technician and Weisensale's job as a mold setter. (Doc. 26-12 at 77). But when Inzi's attorney asked him more about the overlapping duties, Knowles replied, "Well, what they did and what I did was not the same." (Doc. 26-12 at 77–78). Knowles asserts that all mold setters do is change out molds, whereas his position as maintenance technician was a "higher level, higher paying job …." (Doc. 26-12 at 75).

At the time of the reduction in force, Andrews was 56. (Doc. 26-6 ¶18). He supervised the maintenance department, including Knowles, and reported to Moon. (Doc. 26-6 ¶¶5–6). As the supervisor, Andrews was responsible for determining who would be terminated. (Doc. 26-6 ¶15). Andrews selected five employees for

termination in the maintenance department: Rickey Catrett, 57, Process Tech; Michael Knowles, 41, Process Tech; Mark Stokes, 47, Maintenance Tech; Edwin Knowles, 64, Maintenance Tech; and Kevin Teasdale, 44, Maintenance Tech. (Doc. 26-5 at 10). After the reduction in force, Inzi rehired Stokes and Teasdale as mold setters in a different department. (Doc. 26-12 at 36; Doc. 32-3 at 3).

Several of Knowles's supervisors made comments about Knowles's age before the reduction in force. Three to four months before Knowles was terminated, Andrews told him to "get the young guy to change [a bad valve] out." (Doc. 26-12 at 95). And about a month later, Andrews again told Knowles to "get these younger guys to" change out a pump. (Doc. 26-12 at 97). Moon's allegedly discriminatory comment came in April or May 2015 after seeing Knowles for the first time in five years. (Doc. 26-1 ¶3). Moon greeted Knowles by saying, "I figured you done retired by now." (Doc. 26-12 at 102). Two other Inzi employees, Yang and Park, allegedly made some discriminatory comments, but unlike Moon and Andrews, they were not decision-makers. (Doc. 26-1 ¶¶11–12, 17; Doc. 26-6 ¶10).

Knowles knew of rumors swirling about a reduction in force and the loss of business. (Doc. 26-12 at 28–29). The rumors proved true, and Inzi conducted a massive reduction in force due to losing a large part of the plant's business. (Doc. 26-1 at 2–3). As part of this reduction in force, Inzi consolidated the three shifts into two. (Doc. 26-6 at 2). This consolidation caused Andrews to eliminate the second-

shift full-time maintenance technician position, which Knowles then held. (Doc. 26-6 at 3–4). Andrews eliminated the position because he and a technician and mold setter borrowed from the production department could cover the first shift, with just a single person with "extensive, recent mold setter experience" on the second shift. (Doc. 26-6 at 3). Both Andrews and Moon testified that age played no part in their decision-making. (Doc. 26-1 ¶15; Doc. 26-6 ¶16).

After his termination, Knowles brought suit. (Doc. 1). Inzi now brings this motion for summary judgment before the Court, claiming that, as part of the reduction in force, Knowles was terminated because there were other workers better qualified for the remaining work.[1] Inzi also claims that Knowles's post-deposition declaration contradicts his deposition testimony and that Knowles's claims about his job performance and the state of Inzi's business lack personal knowledge. (Doc. 37 at 3–4).

## STANDARD

The court will grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). The court does not weigh the facts. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919

---

[1] Inzi accepts that Knowles was qualified for his position or for another position within Inzi, even if he was not the best qualified worker for the position. (Doc. 27 at 12 n.9).

(11th Cir. 1994). But the court will determine "whether … there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere scintilla of supporting evidence is insufficient. *Id.* at 252.

The moving party need not produce evidence disproving the opponent's claim; instead, the moving party must demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, the nonmoving party must go beyond mere allegations to offer specific facts showing a genuine issue for trial exists. *Id.* at 324. When no genuine issue of material fact exists, the court determines whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

The issues presented in the motion and response brief are (1) whether Inzi engaged in age-discrimination, and (2) whether Inzi's decision to terminate Knowles as part of a reduction in force was pretextual. Inzi claims that there is no evidence of intentional discrimination and that the alleged statements are insufficient to raise a material issue of fact. Inzi also claims that the reduction in force was a legitimate nondiscriminatory reason to terminate Knowles and that there is no evidence that the reduction in force was a mere pretext. Knowles counters that Inzi showed intentional

discrimination both by retaining a younger maintenance tech and by making statements which showed a general discriminatory attitude among Inzi's management. Knowles also claims that Inzi's reasons for terminating Knowles have been inconsistent.

To prove his prima facie case, Knowles must show (1) he was in a protected group and suffered an adverse employment action; (2) he was qualified for his current position or to assume another position at the time of discharge; and (3) sufficient evidence for the fact-finder to reasonably conclude that the employer intentionally discriminated against the plaintiff in reaching that decision. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). The burden then shifts to the defendant, who must provide a legitimate, non-discriminatory reason for the plaintiff's adverse employment action. *Id.* at 1081. The plaintiff may rebut this reason with substantial evidence that it was a mere pretext for discrimination. *Id.*

## I. Evidence

As a preliminary matter, Knowles claims that much of Inzi's evidence is improper because Inzi failed to list key witnesses, failed to timely supplement its disclosures, and designated two new decision-makers in August 29, 2018. Specifically, Knowles objects to the declarations from Youngsik Moon, Sewon Park, Kenneth Weisensale, David Andrews, and Dennis McGowan.

The discovery process is designed "to avoid surprise and minimize prejudice." *Cash v. State Farm Fire & Cas. Co.*, 125 F. Supp. 2d 474, 477 (M.D. Ala. 2000). No party can use information after failing to provide it under Rule 26, "unless the failure was substantially justified or is harmless." *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1357 (S.D. Ga. 2012), *aff'd*, 523 F. App'x 580 (11th Cir. 2013) (quoting Fed. R. Civ. P. 37(c)(1)). The non-disclosing party bears the burden of showing its failure to disclose was substantially justified or harmless. *Id.* And the Court enjoys "broad discretion in determining whether a violation is justified or harmless." *Id.* at 1359. To determine whether a violation was justified or harmless, courts have found the following factors helpful: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Heard v. Town of Camp Hill*, 2017 WL 4172955, at *2 (M.D. Ala. Sept. 20, 2017) (quoting *Cambridge Univ. Press v. Becker*, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)). Because this case will be decided at summary judgment, the Court will modify the third factor and analyze the extent to which the nonmoving party has been unable to sufficiently address the summary judgment motion.

Here, Inzi bears the burden of showing that its failure to formally identify Moon, Park, Weisensale, Andrews, and McGowan was either substantially justified or harmless. Under the first factor, Knowles has not shown he was surprised by this evidence; in fact, he knew about these witnesses since at least March 2018, which was in the discovery period for this case. (Doc. 36-1 at 3–5; Doc. 26-10 at 2–3, 15; Doc. 26-12 at 21). Because there was no surprise, Knowles's ability to cure is irrelevant. The Court has seen nothing that shows this evidence would unfairly prejudice Knowles. On the contrary, this evidence is vital to resolution of this case, especially the testimony of the decision-makers, Moon and Andrews. Inzi's reason for not disclosing the evidence is that it was unnecessary because Knowles already knew about the witnesses. (Doc. 36 at 7). In fact, Knowles testified that he believed he had told his attorney about Moon and Andrews but that his attorney may have forgotten. (Doc. 26-12 at 110–111). After weighing all relevant factors, the Court concludes that Inzi's failure to identify the witnesses was justified and harmless. Knowles knew about these witnesses, and he was perfectly capable of deposing or seeking declarations from them. By failing to do so, he cannot now complain of unfair surprise.

Although Andrews's declaration was originally undated, Inzi has corrected the error and provided an identical dated copy. (Doc. 37-2). Declarations must be dated, but 28 U.S.C. §1746 requires only that the declaration be "in substantially the

[indicated] form ….” And absent “binding authority or an explicit statutory mandate to the contrary, which defendants have not cited, the Court will not strike these declarations for such a trifling technical defect, where the declarations clearly are in substantial compliance with 28 U.S.C. § 1746.” *Hosea v. Langley*, 2006 WL 314454, at *7 (S.D. Ala. 2006). Here, the date could be identified through context because it included the month. And Inzi addressed any lingering concern by providing an updated copy.

Knowles’s objections to the declarations of Moon, Park, Weisensale, Andrews, and McGowan are OVERRULED.

## II. Prima Face Case

Under the Age Discrimination in Employment Act, an employer may not discriminate in matters of “compensation, terms, conditions, or privileges of employment because of such individual’s age.” 29 U.S.C. § 623(a)(1). A plaintiff can make a prima facie case under the Act in two ways that are relevant here: (1) direct evidence or (2) circumstantial evidence. “Direct evidence is ‘evidence, that, if believed, proves [the] existence of [discriminatory intent] without inference or presumption.’” *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004)). And circumstantial evidence only “suggests, but does not prove, a discriminatory motive ….” *Id.* at 921–22 (quoting *Wilson*, 376 F.3d at 1085).

Here, Knowles's evidence that Inzi discriminated against him is that Inzi refused to retain or relocate Knowles but retained Weisensale as a maintenance tech and that his supervisors made comments that showed a general discriminatory attitude. Inzi responds that Knowles's claims are not based on personal knowledge and that stray or isolated comments are insufficient to create an inference of discrimination. The Court agrees with Inzi and holds that Knowles has not made out his prima facie case.

## A. Direct Evidence

Knowles's first allegation concerns his supervisors' allegedly discriminatory remarks. One way a plaintiff can make a prima facie case with direct evidence is to proffer "blatant remarks, whose intent could be nothing other than to discriminate on the basis of age …." *Earley*, 907 F.2d at 1081 (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). These remarks "must directly relate in time and subject to the adverse employment action at issue." *Jones v. BE&K Eng'g Co.*, 146 F. App'x 356, 359 (11th Cir. 2005) (per curiam). The types of blatant remarks which would show direct evidence would be if a manager were to write a note to another manager saying, "Fire that employee—he is too old," *see Earley*, 907 F.2d at 1081, or if the decision-maker were to tell an employee that he could not offer her a job because the manager wanted a male employee. *See Jefferson*, 891 F.3d at 922. Only

comments by decision-makers are relevant evidence of discrimination. *See Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1458 (11th Cir. 1997).

Here, the only relevant comments are those of the decision-makers, Andrews and Moon. And Andrews and Moon's comments are relatively weak evidence of discrimination. Upon seeing Knowles again after five years, Moon expressed surprise that he had not yet retired. And Andrews, also a member of the protected class, twice suggested that Knowles let the younger workers do some of the heavy lifting. Neither of these comments are particularly probative. Together, these three brief comments are insufficient for any reasonable fact-finder to find that Inzi committed intentional age-discrimination when it terminated Knowles as part of a reduction in force.

## B. Circumstantial Evidence

The Court uses the *McDonnell Douglas* test to evaluate a plaintiff's prima facie case of age discrimination relying upon circumstantial evidence. *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996). When the case involves a reduction in force, the Court modifies the test and requires the plaintiff to demonstrate "(1) that she was in a protected age group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age

in reaching that decision." *Id.* at 1531–32.  Here, there is no dispute as to the first two elements—they are met.[2] The third element, however, is disputed.

To show intent to discriminate, Knowles must show either that the employer consciously refused to retain or relocate him because of age or that the decision-maker regarded age as a negative factor in its decision-making. *Jones*, 146 F. App'x at 359 (quoting *Allison v. W. Union Tel. Co.,* 680 F.2d 1318, 1321 (11th Cir. 1982)). And where the decision-makers themselves are members of the protected age group, it is difficult for the factfinder to find unlawful discrimination occurred. *Molenda v. Hoechst Celanese Corp.*, 60 F. Supp. 2d 1294, 1306 (S.D. Fla. 1999). Despite this difficulty, Knowles claims that the Court may infer Inzi intended to discriminate against him based on Knowles's supervisors' comments and his allegations that younger employees replaced him after his termination.

Where comments do not rise to the level of direct evidence, they still may be considered as circumstantial evidence, but only if they were made by the decision-makers. *See Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1500–01 (11th Cir. 1991); *see Zaben*, 129 F.3d at 1458 (noting that only comments by decisionmakers are relevant). Knowles claims that even isolated or stray comments can be sufficient to make a prima facie case. (Doc. 31 at 20) (citing *Alphin,* 940 F.2d at 1501–02).

---

[2] Inzi admits for purposes of summary judgment that Knowles meets the first two elements of his prima facie case: suffering an adverse employment action as part of a protected group and being qualified to assume another position at the time of the reduction in force.

But in the very case Knowles cites, the discriminatory comments accompany strong circumstantial evidence.[3] *See Alphin*, 940 F.2d at 1501–02 (noting that decision-maker's comment accompanied evidence that employee was punished for violating standards before they were officially implemented and that employee's termination was part of plan to terminate other members of protected class). As explained above, while Andrews and Moon's comments as the decision-makers are relevant, they provide little, if any, evidence of discrimination. Thus, Knowles's case hinges on whether there is some additional circumstantial evidence which would amount to substantial evidence.

The only other circumstantial evidence Knowles presents is allegations that Inzi "treated 'similarly situated' employees outside [Knowles's] class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). Specifically, Knowles argues that his duties were transferred to younger employees. That argument fails for three reasons

First, the mere fact that a younger employee took over as part of a reduction in force is insufficient to make a prima facie case. An employer's replacement with a younger employee may evince intentional age-based discrimination. *Jones*, 146 F.

---

[3] The other case which Knowles cites is not directly on point. *See, e.g.*, *Dickson v. Amoco Perf. Prods.*, 845 F. Supp. 1565, 1569–70 (N.D. Ga. 1994) (plaintiff won because defendant completely declined to discuss or analyze comments, relying solely on assertion that stray remarks were not enough). *But see Molenda*, 60 F. Supp. 2d at 1305 (holding plaintiff did not make prima facie case when decision-maker suggested plaintiff was "too old for the job" six months before termination).

App'x at 359 (quoting *Allison,* 680 F.2d at 1321). But reduction in force cases complicate this factor, and the Eleventh Circuit has instructed lower courts not to ask "mechanistically" whether an employer replaced a plaintiff with a younger employee in this context. *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998). An unfortunate reality of a reduction in force is "that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." *Earley*, 907 F.2d at 1084 (alteration and quotation marks omitted). "That means drawing fine distinctions between qualified employees, who, under better economic conditions, might all continue to be employed." *Jones v. RS&H, Inc.*, 2019 WL 2323783, at *9 (11th Cir. May 31, 2019).

Here, Knowles claims that a younger employee, Weisensale, and his supervisor, Andrews, took over his duties following the reduction in force and that this transfer of duties is evidence of intentional discrimination. (Doc. 31 at 18) (citing *Jones*, 146 F. App'x at 359).  But Knowles's argument would require the Court to apply the kind of "mechanistic" approach that the Eleventh Circuit has rejected. In fact, the authority Knowles raises for his argument, *Jones*, holds precisely the opposite of what he claims it does. 146 F. App'x at 359–60 ("[B]ecause [the plaintiff] could not show that [the employer] had an intent to discriminate against him based on his age, he could not establish a prima facie case of age discrimination and, thus, summary judgment was proper."). Under Eleventh Circuit

case law, the mere fact that a younger employee absorbs a plaintiff's work after a reduction in force is insufficient evidence to establish a prima facie case of discriminatory intent. *See id.* at 359 ("The evidence in the record established that [the employer] chose to terminate [the plaintiff] and retain [the younger employee] because [his] engineering degree made him more valuable for the future needs of the company and more suited to the demands of [the employer's] clients.").

Second, Knowles and Weisensale are not similarly situated. "[A] plaintiff asserting an intentional-discrimination claim under *McDonnell Douglas* must demonstrate that she and her proffered comparators were 'similarly situated in all material respects.'" *Lewis*, 918 F.3d at 1218. Also, most of Knowles's evidence regarding his claim depends on his own opinion of his qualifications and his assessment of Inzi's business. Evidence that lacks personal knowledge is not admissible on summary judgment. Fed. R. Civ. P. 56(c)(4); *Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002). Thus, the portions of Knowles's declaration that lack personal knowledge are inadmissible.

Comparators neither need to be similar in all but the protected category nor share formal similarities such as the same title. *Lewis*, 918 F.3d at 1227. Minor differences in job function will not disqualify a comparator. *Id.* Instead, a valid comparison depends on "substantive likenesses" such as the plaintiff and the comparator sharing the same basic conduct; governing policies, guidelines, and

rules; supervisors; and employment or disciplinary history. *Id.* at 1227–28. For example, age discrimination does not include retaining a younger employee because the younger employee has additional training or a degree valuable to the needs of the company. *See Jones*, 146 F. App'x at 359.

Here, Weisensale and Andrews lack the substantive likenesses that would permit them to be comparators for Knowles. As Knowles's supervisor, Andrews was in a quite different position than Knowles. And Weisensale had extensive, recent experience as a mold setter, which is what Inzi required at the time of the reduction in force. Knowles had never been a mold setter, and he was paid more than Weisensale because of his additional knowledge and experience. Because of the downturn, Inzi required someone with experience in basic skills who did not demand the higher salary that went with Knowles's experience. (Doc. 26-6 at 3); *see Chavez v. URS Fed. Tech. Servs., Inc.*, 504 F. App'x 819, 821 (11th Cir. 2013) (holding that employer met burden of showing reduction in force was not pretextual where employer laid off senior employee in favor of employee with lower salary). So, like the employer in *Jones*, Inzi decided that one of its employees, Weisensale, had more relevant training and experience than the employee claiming discrimination. This is a legitimate business decision. Even if there were some overlap between the mold setter and maintenance technician positions, which is disputed, Inzi made a

permissible business decision in retaining the employee who would cost them less and who had recent experience doing the entire job, not just a portion of it.

Third, Weisensale did not take over Knowles's position—it ceased to exist as Inzi's entire operation changed from three shifts to two. Before the reduction in force, Inzi had three shifts, and Knowles worked as a maintenance technician on the second shift (Doc 26-1 ¶12; Doc. 26-12 at 37). Then, as part of the reduction in force, Inzi eliminated the second-shift full-time maintenance technician position. Andrews decided that he would cover the first shift along with a technician and mold setter from the production department. For the second shift, he would keep only one person with "extensive, recent mold setter experience." Weisensale had been a mold setter for almost two years and then a maintenance technician for six months until the reduction in force. Even as a maintenance technician, Weisensale had "continued to do some mold setting on second shift along with maintenance technician duties …."

Knowles has not provided substantial evidence to establish a prima facie case that Inzi intended to discriminate against him based on age. No one disputes that Knowles was a good employee. But in difficult economic circumstances, Inzi had to make difficult decisions. The Court holds that Knowles has not made a prima facie case.

### III. Inzi's Reduction in Force was a Legitimate, Non-discriminatory Reason to Terminate Knowles, and There is No Evidence of Pretext

Even if Knowles had made a prima facie case, his ADEA claim would still fail because Inzi had a legitimate, non-discriminatory reason to terminate Knowles which Knowles has not shown was pretextual. When an employee makes a prima facie case, the employer may rebut it by showing a legitimate, non-discriminatory reason for the adverse employment action. *Earley*, 907 F.2d at 1082. This burden is "exceedingly light." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam), *abrogated on other grounds by Lewis*, 918 F.3d at 1217.

Here, Inzi lost two major clients and was forced to take measures to rebuild the company. Although the exact number of layoffs is disputed, even Knowles acknowledges that on the low end, at least fifteen workers were laid off. (Doc. 31 at 24). Losing a large amount of business with a corresponding reduction in force is enough to meet Inzi's "exceedingly light" burden to provide a legitimate, non-discriminatory reason for terminating Knowles.

Once the employer provides a legitimate, non-discriminatory reason, the employee may rebut with evidence showing that the reason was a mere pretext. *Earley*, 907 F.2d at 1082. "This evidence must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771

(11th Cir. 2005) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004)) (interior quotation marks omitted). These weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions must strike at the heart of the matter and not just jab at the periphery. *Compare id.* at 771–72 (finding pretext where plaintiff denied unprofessional behavior and remedial meetings occurred and where employer violated own regulations by giving another candidate time to qualify for position and by choosing candidate without PhD over plaintiff with PhD) *with id.* at 772 (finding no pretext where plaintiff focused on races of decision-maker panel and alleged that procedures for choosing panel had been skewed).

The alleged weaknesses, implausibilities, incoherencies, or contradictions must go beyond merely alleging that the decision-maker made the wrong decision or was mistaken about the underlying facts. *See id.* at 771 (noting that court does not question whether decision-maker's decision was correct, just whether proffered reasons were sincerely held); *Alsobrook v. Fannin Cty*, 698 F. App'x 1010, 1013 (11th Cir. 2017) (quoting *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002)) (noting lack of evidence that employer either did not honestly believe expressed reasons for terminating plaintiff or that reduction in force was necessary). The type of inconsistency that concerns the court is where there is a shifting explanation for terminating an employee. *See, e.g.*, *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1997) (finding evidence of pretext due to shifting

explanations where employer explicitly denied in district court that employee's job performance was basis for termination, but on appeal argued that employee's layoff was solely due to poor performance).

Here, Knowles alleges several "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in Inzi's reasons for terminating him: (1) Inzi changed who it said was the decision-maker; (2) Inzi told the EEOC that it terminated Knowles as part of the reduction in force because he was inexperienced in mold-setting and was unwilling to learn, but Andrews said Inzi terminated Knowles because Weisensale had more recent mold setting experience; (3) Inzi first stated that the reduction in force was necessary because of "a significant reduction in the manufacturing needs of customers" and then that it was because it lost two customers; and (4) Inzi was inconsistent about the number of employees terminated as part of the reduction in force.

These purported inconsistencies do not strike at the heart of whether Inzi's reasons for terminating Knowles were pretextual. Inzi has been consistent in asserting that Knowles was terminated as part of a reduction in force, that he was not the best fit for the remaining mold-setting job, and that unyielding economic realities necessitated the reduction in force. In any case dealing with multiple decision-makers, there will be some inconsistencies in testimony and statements because a business is made up of individuals who have different perspectives and

degrees of information. *See, e.g.*, *Saye v. Vanity Fair Brands, LP*, 2009 WL 10668455, at *12 (N.D. Ga. Oct. 26, 2009) (finding no inference of discrimination where differences existed between position statement to EEOC prepared by in-house counsel and decision-maker's statements during litigation). But none of the inconsistencies that Knowles has identified are enough to convince a reasonable jury that Inzi's proffered explanation is unworthy of credence and a cover for discrimination.

Moreover, the Court does not question whether the decision-maker made the correct decision, just whether the proffered reasons were sincerely held. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Many of Knowles's disputed facts merely question the correctness of Inzi's decision by claiming that he had more experience than Weisensale and that Inzi did not really need to engage in a reduction in force. To show pretext, Knowles needs substantial evidence such that a reasonable jury could conclude that Inzi's management did not believe that a reduction in force including Knowles was necessary. But all of the evidence points the other way. (Doc 26-6 ¶¶13–14).

Inzi's reason for terminating Knowles has not changed: the evidence is undisputed that a reduction in force occurred, that it affected employees in and outside the protected class, and that Knowles was terminated as part of that reduction in force. "It is very difficult to make a jury issue out of pretext when the articulated

reason for an employee's termination is a RIF that involves as many as eleven employees." *E.E.O.C. v. McPherson Cos., Inc.*, 914 F. Supp. 2d 1234, 1247 (N.D. Ala. 2012). Knowles has failed to meet his burden, and the inconsistencies that Knowles identifies are not such that "a reasonable factfinder could find [Inzi's stated reasons] unworthy of credence." The Court cannot conclude that Inzi's termination of Knowles as part of a reduction in force was pretextual.

**CONCLUSION**

Based on the above reasoning, Inzi's Motion for Summary Judgment is GRANTED. A final judgment will be entered by separate order.

**DONE** and **ORDERED** this 19th day of September 2019.

/s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE
